UNITED STATES *v.* BAYAUD and another.

*(Circuit Court, S. D. New York.* March 30, 1883.)

1. INDICTMENT FOR REMOVING STAMPS FROM CASKS CONTAINING DISTILLED SPIRITS—SECTION 3324, REV. ST.—DOMESTIC OR FOREIGN SPIRITS.

As the offense described in section 3324 of the Revised Statutes, as amended by the act of March 1, 1879, § 12, is committed by the removal, without destroying, of stamps from a cask containing distilled spirits, whether such spirits be foreign or domestic, it is not necessary in the indictment to describe the spirits as domestic in order to charge an offense.

2. SAME—LICENSED OR ILLICIT DISTILLERY.

What is forbidden is the removal of the stamp from a package of distilled spirits without, at the same time, destroying it, and the offense is committed whether the spirits in the cask be the product of a licensed or an illicit distillery, and without reference to the circumstances under which the stamp was affixed.

3. SAME—CAPACITY OF CASKS.

It need not be alleged in the indictment that the casks contained more than five gallons, and were not "standing casks."

4. SAME—DESCRIPTION OF STAMPS.

It is not necessary in the indictment to set out the stamps removed *verbatim.* A description thereof by their statutory designation is sufficient.

5. SAME—BILL OF PARTICULARS.

A bill of particulars cannot cure the omission of a material averment from an indictment; but when, as in this case, the indictment shows that the description of the stamps removed is all that was within the power of the grand jury to give, and such description is sufficient to show that an offense has been committed, and when it appears of record that further and full particulars were afterwards given under the order of the court, a bill of particulars so obtained is an answer to the suggestion that the accused will not be able to identify by evidence the stamps to which the indictment refers, and plead an acquittal or conviction on such indictment in bar of a subsequent charge for the same offense.

6. SAME—OBJECTIONS AFTER PLEA OF GUILTY.

After a plea of guilty, the only objection that can be made to the indictment is that it fails to describe the various acts intended to be proved with that reasonable certainty which the law requires to constitute a valid indictment.

7. SAME—CHARGING INTENT.

As neither an intent to use the stamps again, nor an intent to defraud the United States, nor any other particular intent, is made by the statute an ingredient of this offense, the indictment need not charge any such intent.

8. SAME—IMPERFECT AVERMENT CURED BY VERDICT—PLEA OF GUILTY.

The rule that where an averment, which is necessary for the support of the pleading, is imperfectly stated, and the verdict could not have been found without finding this imperfect averment to have been proved in a sense adverse to the accused, then, after verdict, the defective averment, which might have been bad on demurrer, is cured by the verdict, applies with full force to a case where, although there has been no verdict of guilty, there has been a plea of guilty.

9. SAME—KNOWLEDGE OF CONTENTS OF CASKS.

As, in this case, the statute bound the accused to know the facts and to obey the law at their peril, a conviction may be had without charging in the indictment knowledge of the contents of the casks from which the stamps were removed.

10. SAME—STATUTORY DESIGNATION OF STAMPS.

Although the statute designates the stamps respectively "distiller warehouse stamps" and "tax-paid stamps," a designation of such stamps in the indictment as "United States internal-revenue distillery warehouse stamps" and "United States internal-revenue tax-paid stamps for distilled spirits," will be sufficient.

11. SAME—JOINDER OF DEFENDANTS.

As the nature of the offense charged in this case is such that a joinder of offenders is permissible, the indictment is not bad because it joins two defendants.

12. SAME—SEPARATE OFFENSES—OBJECTION IN ARREST OF JUDGMENT.

An objection that an indictment charges two separate and distinct offenses, cannot be availed of on a motion in arrest of judgment.

On Motion in Arrest of Judgment.

Before WALLACE, BENEDICT, and BROWN, JJ.

BENEDICT, J. This case comes before the court upon a motion in arrest of judgment, upon a plea of guilty. The statute to which attention has been called in connection with the motion is as follows:

"Every person * * * who removes any stamp, provided by law, from any cask or package containing, or which had contained, distilled spirits without defacing and destroying the same at the time of such removal, or who aids or assists therein, * * * shall be deemed guilty of felony." Rev. St. § 3324.

The indictment contains several counts substantially alike. The first count charges that at a time and place stated the accused—

"Did feloniously, knowingly, and fraudulently remove 36 United States internal-revenue stamps, provided and required by law of the United States for distilled spirits, to-wit, 18 United States internal-revenue distillery warehouse stamps for distilled spirits, and 18 United States internal-revenue tax-paid stamps for distilled spirits of the denomination of 40 gallons,—a more particular and definite description of which said stamps being as yet to the jurors aforesaid unknown,—from 18 casks then and there containing distilled spirits, to-wit, gin,—a more particular and definite description of which said casks and distilled spirits being as yet to the jurors aforesaid unknown,—on which said

casks said stamps had theretofore been placed, as provided and required by law of the United States, as they, the said George D. Bayaud and Gustav F. Perrenaud then and there well knew, without defacing and destroying the said stamps at the time of the removal thereof as aforesaid."

To this count the first objection taken is that it charges no offense, because it omits to state that the spirits contained in the casks were of domestic manufacture. This objection is evidently based upon the supposition that the provision of the statute above quoted is applicable to casks containing domestic spirits only. This is a misapprehension. By the act of March 1, 1879, § 12, (20 St. at Large, 342,) the provision is made applicable to imported spirits as well. The offense is committed by the removal, without destroying, of stamps from a cask containing distilled spirits, whether such spirits be foreign or domestic. It is not necessary, therefore, to describe the spirits as domestic in order to charge an offense.

The next objection is that the count is defective because it does not show that the spirits contained in the casks in question had been produced in a licensed distillery, and that the stamps had been affixed to the casks in pursuance of the requirements of law. Here the argument is that only spirits produced in a licensed distillery are required to be stamped, and the provision above quoted applies only to the removal, without destroying, of stamps lawfully affixed; wherefore it is said that there must be an allegation and proof that the spirits in the casks had been produced in a licensed distillery; that a warehouse entry of them had been made; that the warehouse stamp referred to had been affixed to the casks in conformity with such entry; that the tax on the spirits described had been subsequently paid; and the tax-paid stamp referred to affixed after such payment.

In order to sustain this position the statute must be understood as if it read, "any person who removes a stamp which has been affixed as required by law from any cask to which it was so affixed," etc. But the statute reads otherwise. It describes the stamp referred to by the words "any stamp provided by law," and it describes the cask as "any cask containing or which has contained distilled spirits," and it prohibits the removal without destroying of such a stamp from such a cask, and no words are used indicating an intention to limit the offense to removals without destroying of such stamps only as may have been affixed to the cask in question in the particular mode directed by law. Stamps of various kinds are provided by law for distilled spirits, and the object of the provision in question is to prevent a second use of any such stamp after it has been once affixed to

a cask of distilled spirits.    The removal of a governmental stamp from a cask of distilled spirits is not prohibited.    What is forbidden is the removal of such a stamp from a package of distilled spirits without at the same time destroying it; and the offense is committed whether the spirits in the cask be the product of a licensed or illicit distillery, and without reference to the circumstances under which the stamp was affixed.    So the ingredients of the offense created by the statute in question (aside from knowledge and intent, which will be adverted to hereafter) are: (1) A removal, without at the same time destroying, of any stamp provided by law; (2) from any cask containing or which had contained distilled spirits.    These ingredients are not wanting in the present indictment.    What has already been said disposes of the further point made, that it should appear on the face of the indictment that the casks contained more than five gallons, and were not "standing casks."

The next objection to the indictment is that the stamps are not set out *verbatim*.    Here reliance is first placed upon the rule that when words, whether written or spoken, form part of the gist of the offense they must be set out *verbatim*.    This rule has no application to a case like this.    Stamps of various kinds are provided by law and their form prescribed.    One kind, having a designated form, is termed a "distillery warehouse stamp," (21 St. at Large, p. 147;) another is designated by the statute as a "tax-paid stamp," and its form is prescribed, (section 3295, Rev. St.)    To remove, without destroying, any stamp of either of these kinds from a cask containing distilled spirits is an offense, not because of the words printed on the face of the stamp, but because it is a stamp provided by law.    The words upon the stamp form no part of the gist of the offense.    That would be the same if the stamp exhibited a mere device without words.    For the purposes of this statute the stamp is a mere emblem, and when it is described by its statutory designation such description brings the thing within the scope of the statute, for every "distillery warehouse stamp" or "tax-paid stamp" is a stamp provided by law.

In larceny, when a bank-note is the subject of the offense, it is needless to set forth the note.    Archb. Crim. Pr. & Pl. 56.    When the offense is selling a lottery ticket, the ticket is not required to be set forth.    *People* v. *Taylor*, 3 Denio, 99 ; *Freleigh* v. *State*, 8 Mo. 613. The present case is analogous in principle.

Again, it is said that the stamp must be set out to enable the court to see that it was an engraved stamp, and filled out according to law. Rev. St. § 3312.    But setting out the stamp *verbatim* in the indictment

would not show to the court that it was engraved, nor that it was filled out as the law required. Again, it is said a tax-paid stamp is a receipt for the tax on the spirits in the cask, and whether these stamps purported to be receipts for such tax can only be determined by the contents of the paper. But section 3324 nowhere says that the stamp referred to must be a receipt. The words are, "any stamp provided by law;" and the removal, without destroying, of such a stamp from a cask containing spirits is forbidden, whether the stamp shows the receipt of the tax lawfully charged on the spirits or not. Reference has been made to the rule in respect to indictments for forgery, where the forged note must be set out to enable the court to see that the thing made or uttered is in the similitude of a thing capable of being forged. Here we have nothing to do with the similitude of a stamp, but with the stamp itself,—a thing having a statutory name and form, which is therefore legally described by using the statutory designation. Again, it is said the stamp should be set out in order to inform the accused of the history of the casks to which they were affixed. But the accused can be informed of the act charged without furnishing a history of the casks. To require that would annul the statute. Still again, it is said the stamp should be set out to enable the accused to be prepared to show that the stamps removed were not genuine, or were removed by persons other than the defendants. But all this may be secured to the accused without setting out the stamps *verbatim*.

To require the setting out of the stamps *verbatim* is one thing; to require a description of the act charged sufficient to identify it is quite another; and whether the description of the act charged, furnished by this indictment, is sufficient for that purpose, is the next question to be considered.

The description given of the act intended to be proved against the accused is as follows, viz.: That at a certain time and place they did, from 18 casks containing gin, remove, without destroying, 36 United States internal-revenue stamps, prescribed and required by law for distilled spirits, to-wit, 18 United States internal-revenue distillery warehouse stamps for distilled spirits, and 18 United States internal-revenue tax-paid stamps for distilled spirits of the denomination of 40 gallons, a more particular and definite description of which said stamps is as yet to the jurors unknown.

The act intended to be proved is removing, without destroying, certain stamps. If the case were larceny the act would be taking and carrying away certain stamps. An indictment for larceny, containing

a description of the property taken, such as this indictment affords, would be good according to many authorities; as, for instance, 2 Hale, 283, where the description given is "20 sheep;" *Reg* v. *Gallears*, 1 Denison, C. C. 501, where the description is "one ham;" *Rex* v. *Johnson*, 3 Maule & S. 540, where the description is "nine bank-notes."

Considering the analogy between the act of removing and the act of taking and carrying away, it is not seen why any greater particularity in describing the property should be required in the one case than in the other. Certainly too much is claimed when it is asked that the indictment indicate the evidence by which the government intends to support the charge that the accused removed these stamps. The degree of certainty required in an indictment depends upon the character of the offense. Complete certainty is not, in all cases, required. What is sufficient certainty in any case depends on the nature of the offense and the circumstances of the case. The description here is carried so far as to point out that the stamps removed were 18 United States internal-revenue distillery warehouse stamps, and 18 United States internal-revenue tax-paid stamps for distilled spirits of the denomination of 40 gallons, and that they were removed from casks, and that such casks contained gin.

Moreover, the grand jury say that these are all the particulars known to them. No doubt each of these stamps at some time displayed other distinguishing characteristics besides those stated in the indictment; but it does not follow, as contended by counsel, that such other particulars must have been known to the grand jury. The stamps may have been accidentally defaced since their removal from the casks and before exhibition to the grand jury, so as to disclose no more than is stated in the indictment, or they may have been lost and so never exhibited to the grand jury, or they may been beyond the reach of the grand jury, and no more of their contents recollected by witnesses of the removal than the indictment discloses, and still their removal may have been proved. It has never been supposed necessary to produce the subject of a larceny before the grand jury, and it is entirely possible to give legal proof of the removal of those stamps at the time and place stated without producing the stamps themselves. It is by no means correct, therefore, to say that "this indictment is either a fraud upon the court, and its presentation a perversion of justice, or else the allegation in it is untrue."

But it is again contended that the contents of the stamps, so far as printed in the statutes, might have been given. Certainly; but

without any benefit to the accused. The stamps are described by their statutory designation, and the accused is thereby most certainly informed of their contents, so far as printed in the statutes, for no stamp can come within the designation of the statute unless in the statutory form.

Again, it is contended that the stamps should be set out to enable the accused to plead an acquittal or conviction in bar of a subsequent charge for the same offense; and it is said more than 100 stamps are alleged to have been removed, and if the accused are again indicted for removing any of these it will be impossible for them to show by the record or by evidence that the subject of such new indictment is one of those referred to in this indictment. Here is not the place to object to the indictment because of the number of charges it contains. The accused, without objection, have plead guilty to each charge made. After such plea the only objection open to them on this score is that the indictment fails to describe the various acts intended to be proved with that reasonable certainty which the law requires to constitute a valid indictment. Such a degree of certainty in an indictment as will preclude the necessity of any evidence to identify the subject-matter is not required. "There must be some parol evidence in all cases to show what it was that he was tried for before." *Reg.* v. *Mansfield*, 1 Car. & M. 140. In the present case, if the accused believed themselves to be exposed to the danger of a second prosecution in respect to any of the stamps forming the subject of this indictment, because not possessed of evidence to identify the stamps, it was open to them, before pleading guilty, to provide themselves with such evidence by means of a bill of particulars. And the record presented on this motion shows that this precaution was not omitted.

A bill of particulars cannot cure the omission of a material averment from an indictment; but when, as here, the indictment shows that the description of the stamps removed is all that was within the power of the grand jury to give, and such description is sufficient to show that an offense has been committed, and when it appears of record that further and full particulars were afterwards given under the order of the court, a bill of particulars so obtained is an answer to the suggestion that the accused will not be able to identify by evidence the stamps to which the indictment refers.

Here it should also be remarked that in point of fact the indictment has proved sufficient to enable the accused to identify the acts charged, for it enabled them to say to the court in the most solemn manner, by their plea of guilty, that they had committed the acts

charged. It would hardly do, therefore, to permit them, after acknowledging their guilt, to escape punishment upon the theory that they are not informed by the indictment as to what they say by their plea they were thereby informed.

In *U. S.* v. *Schimer*, 5 Biss. 195, an indictment was upheld where the act was described as "removing five kegs of lager beer without affixing and canceling a stamp denoting the tax on said beer," and the case is one properly cited here, for this case, like that, is one arising out of a revenue law and purely statutory. The circumstance that the statute under consideration declares the offense a felony does not take the case out of the reason of the rule applied in *Schimer's Case*, for it will be observed that this statute, like the statute considered by the supreme court in *U. S.* v. *Staats*, 8 How. 46, does not make a felonious intent part of the description of the offense, but refers to felony only in connection with the punishment.

The next point to be considered is that the indictment does not charge an intent to use the stamps again, or an intent to defraud the United States. A sufficient answer to this objection is that neither an intent to use the stamps again, nor an intent to defraud the United States, nor any other particular intent, is made by the statute an ingredient of the offense, and there is nothing in the nature of the offense, or in the language used to describe it, that enables the court to fix upon any particular intent as intended to be implied. Two particular intents are suggested in the objection as made. How is the court to select between them? It is to be borne in mind that the general criminal intent, the wicked mind, (which being absent—as, for instance, in cases of removing stamps by mistake or by order of court, etc.—may take such cases out of the scope of the statute,) is a different thing from the particular intent here sought to have inserted in the statute by the court. A general criminal intent is charged in this indictment by the word "feloniously." Upon this point the greatly-considered case of *Queen* v. *Aspinall,* L. R. 2 Q. B. Div. 48, as to which see remarks of BRETT, J., in *Bradlaugh* v. *The Queen,* 3 Q. B. Div. 626, is a direct adjudication.

But if the particular intent to defraud the United States is to be grafted into this statute by the court, still the objection under consideration cannot avail, for here is to be applied the rule that where an averment which is necessary for the support of the pleading is imperfectly stated, and the verdict could not have been found without finding this imperfect averment to have been proved in a sense adverse to the accused, then after verdict the defective averment, which might

have been bad on demurrer, is cured by the verdict. *Heymann* v. *Reg.* L. R. 8 Q. B. 102–105; *The Queen* v. *Aspinall, supra*; *Wills* v. *Claflin*, 92 U. S. 141. In this case, although there has been no verdict of guilty, there has been a plea of guilty, and the rule cited applies with full force. So that if, as contended, the particular intent to defraud the United States is an ingredient of the offense, to be averred and proved, then the charge which the indictment contains, that the accused "fraudulently" removed the stamps, is now to be taken in the only sense in which it could be material in a description of the offense in question, viz., as meaning "with intent to defraud the United States." The case is one of an imperfect averment cured by the plea of guilty.

It is next objected that the indictment is fatally defective because it omits to allege that the accused knew that the casks contained distilled spirits. In regard to this point it is first to be remarked that it depends upon the proper construction to be given the statute above quoted. Looking at the words employed as indicating the intent of the law, it is seen that the statute mentions certain ingredients as necessary to constitute the offense, and makes no allusion to knowledge that the casks contained or had contained distilled spirits. It would have been so easy and so natural to have designated such knowledge among the other ingredients, if it had been intended to make such knowledge an ingredient of the offense, that the omission of any expression to that effect goes far of itself, considering the object of the statute, (see *A Quantity of Distilled Spirits*, 3 Ben. 558,) to repel the presumption of such an intention.

The argument in support of such a presumption assumes that knowledge of the contents of the casks must be proved in order to render the act of removing stamps punishable as a crime. But no such assumption can be indulged in. Statutory crimes where knowledge or intent are not ingredients of the offense are common. The rule applied in such cases is that where a statute forbids the doing of a certain act under certain circumstances without reference to knowledge or intent, any person doing the act mentioned is charged with the duty to see that the circumstances attending this act are such as to make it lawful; and under such statutes a conviction may be had upon proof of doing the forbidden act, without proof of knowledge by the accused of the circumstances specified in the statute. The books contain many cases where such a rule has been applied. For instance, *Barnes* v. *State*, 19 Conn. 399, where the act charged was selling liquor to a common drunkard, in which case the court

refers to cases of enticing a female under 21 years of age, and of adultery, (see *Fox* v. *State*, 3 Tex. Ct. App. 329,) as within the rule; *Com.* v. *Waite*, 5 Mass. 264, where the act charged was selling adulterated milk; 2 Allen, 160, where selling liquor that was intoxicating was the offense; *State* v. *Heck*, 23 Minn. 549, where selling liquor to an habitual drunkard was charged; 1 Russ. Crimes, 93, where the crime charged is inducing a soldier to desert; *Reg.* v. *Robins*, 1 Car. & K. 456, where the crime was abducting an unmarried girl under 16 years of age. Also, *Reg.* v. *Olifier*, 10 Cox, C. C. 402; *Fitzpatrick* v. *Kelly*, L. R. 8 Q. B. 337, where the charge was selling adulterated butter; *Reg.* v. *Woodrow*, 15 Mees. & W. 404, where the offense was having in possession adulterated tobacco, and where it was found as a fact that the accused believed the tobacco to be unadulterated. See, also, *Halsted* v. *State*, 12 Vroom, 552. In all these cases a point similar to the one under consideration was made without avail.

No reason has been suggested why the rule above stated should not be applied in the present case. By the statute under consideration a certain act is made criminal when done under certain circumstances, without reference to knowledge or intent. The act described is removing from a package to which it is affixed a stamp provided by law, without at the same time destroying the stamp. This act is forbidden under certain circumstances; namely, where the stamp is affixed to a package containing, or which had contained, distilled spirits. The accused were under no obligation so to remove such stamps from the cases to which they were affixed without informing themselves in respect to the contents of the casks,—as to which the stamps themselves were probably legal notice; but, if not, they were certainly sufficient to provoke inquiry. When such stamps were so removed from the casks, at the time containing distilled spirits, the act made criminal by the statute was done. In such a case a conviction may be had without charging in the indictment knowledge of the contents of the casks, for the statute bound the accused to know the facts and to obey the law at their peril. 3 Greenl. Ev. p. 21, § 21.

But if the law were otherwise, and an averment of knowledge be requisite, still the present indictment does not fall, for the reason that the possession by the accused of knowledge that the casks contained distilled spirits is necessarily implied in the averment of the indictment, where it is said: "On which said casks said stamps had

theretofore been placed, as provided and required by law of the United States, as they, the said George D. Bayaud and Gustav F. Perrenaud then and there well knew." The knowledge thus imputed to the accused could not be possessed by them without their knowing that the casks contained or had contained distilled spirits. Certainty to a certain extent, in general, is the most that is required in an indictment; and any fact by necessary implication included in what is alleged is sufficiently averred to uphold a conviction. Archb. Crim. Pr. & Pl. (17th Eng. Ed.) 54.

Still, again, it is objected that the stamps referred to are not described by their statutory designation, because the statute designates them respectively "distillery warehouse stamps" and a "tax-paid stamp," while the indictment uses the words "United States internal-revenue distillery warehouse stamps" and "United States internal-revenue tax-paid stamps for distilled spirits." But there is no mistaking the description given. The plain reference is to the statutory "distillery warehouse stamp" and the statutory "tax-paid stamp," and that is sufficient.

The next point made in behalf of the accused is that the indictment is bad because it joins two defendants, when the nature of the offense is such that no joinder of defendants is permissible. The rule of the common law is that all present at the time of committing the offense are principals, although only one acts, if they are confederates and engaged in a common design of which the offense is a part. This rule applies as well in statutory offenses. Prentiss, Crim. Proc. 14. Nothing is discovered in the nature of the offense in question to prevent one of the defendants being principal in the first degree and the other a principal in the second degree. If so, their joinder is permissible.

Lastly, it is sought to have judgment arrested because the indictment charges in each count at least two separate and distinct offenses. Whether such be the fact it is unnecessary here to decide, for, assuming the defect to exist, it cannot be availed of on a motion in arrest of judgment.

All the grounds urged in support of the motion to arrest the judgment have now been considered, and, none of them being found tenable, the motion must be denied.